**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed / Docketed
July 21, 2008

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| COMMERCIAL FINANCIAL | ) | Case No. 98-05162-R |
| SERVICES, INC., | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CF/SPC NGU, INC., | ) | Case No. 98-05166-R |
| | ) | Chapter 11 Jointly Administered |
| Debtor. | ) | with Case No. 98-05162-R |

_____

| | | |
|---|---|---|
| SHERI L. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-1127-R |
| | ) | |
| COMMERCIAL FINANCIAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Motion for Summary Judgment (Adv. Doc. 36) and Brief in

Support of Motion for Summary Judgment (Adv. Doc. 37) ("CFS's Brief") filed on May 29,

2008, by Bradley D. Sharp, Trustee of the CFS Liquidating Trust (the "Trustee") on behalf

of Defendant Commercial Financial Services, Inc., n/k/a Commercial Financial Services,

LLC, a Delaware Limited Liability Company ("CFS"); Plaintiff's Reply to CFS's Motion

for Summary Judgment (Adv. Doc. 38) ("Response"), filed on June 6, 2008, by Plaintiff Sheri L. Harris ("Ms. Harris"); and the Reply to Plaintiff's [Response] Reply to CFS' Brief in Support of Motion for Summary Judgment (Adv. Doc. 40) ("Reply"), filed on June 16, 2008, by the Trustee on behalf of CFS.

## I.      Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), (B) and (O); Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma; and Article X of the Second Amended Plan of Orderly Liquidation (CFS) entered in Case No. 98-05162-R.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056. A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Wright *ex rel*. Trust Co. of Kansas v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001), *citing* Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Spaulding v.

United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Spaulding, 279 F.3d at 904, *citing* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Liberty Lobby, 477 U.S. at 248. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Liberty Lobby, 477 U.S. at 256. Rather the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Mitchell v. City of Moore, 218 F.3d 1190, 1197 (10th Cir. 2000), *quoting* Adler, 144 F.3d at 671. To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (quotations and citation omitted).

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the non-moving party. See Adams, 233 F.3d at 1246. However, "[i]f the [non-moving party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" <u>Matsushita</u>, 475 U.S. at 587.   Conversely, even where a movant's facts are undisputed, if two reasonable factfinders could reach different conclusions or "ultimate inferences" from the undisputed facts, summary judgment is not warranted.  <u>See</u> <u>Luckett v. Bethlehem Steel Corp.</u>, 618 F.2d 1373, 1382 (10th Cir. 1980).

### III.    Contentions of the Parties

On October 12, 2007, Ms. Harris, acting *pro se*, filed a "Statement of Complaint" to commence this adversary proceeding (Adv. Doc. 1) (the "Complaint").  Ms. Harris attached to her Complaint copies of relevant correspondence and copies of checks and other evidence of payment.  Generously construed, the Complaint alleges that NCO Financial Systems ("NCO"), a debt collector, violated the Fair Debt Collection Practices Act ("FDCPA") by demanding through correspondence that Ms. Harris pay a credit card debt originally owed to First USA/Bank One, and by collecting in excess of $10,000.00 from her during the period of July 27, 1999, through approximately August 29, 2006,[1] all without providing Ms. Harris with a "validation" of the debt as required by 15 U.S.C. § 1692g.  Ms. Harris alleges that although she paid the amount NCO demanded, she does not believe that she owed the debt, and no one has ever verified the basis or legitimacy of the debt.

Ms. Harris also contends that NCO engaged in deceptive debt collecting practices because NCO induced her to pay the debt by stating that non-payment would harm Ms. Harris's credit rating.  She further alleges that when she settled the debt with NCO, NCO

_____

[1]Pursuant to a letter dated August 29, 2006, NCO acknowledged that Ms. Harris had paid $10,550.00, which constituted payment of the debt in full.  <u>See</u> Complaint at 14.

4

agreed to notify the credit reporting agencies that "the account was settled in full" if she paid the settlement amount demanded. However, when Ms. Harris checked her credit reports after satisfying the debt, the debt did not appear on the credit reports as ever having been owed.

With respect to her allegations against CFS, Ms. Harris alleges that before NCO began collecting the debt, CFS had collected $850.00 on the same First USA/Bank One account from December 2, 1998 to March 17, 1999, and that CFS, too, failed to "validate" the debt. She alleges that in February 2000, CFS advised her that it was no longer servicing the account and the account had been transferred to NCO for servicing.[2]

The account at issue was a charged-off credit card debt that had been purchased from the lending institution (First USA/Bank One) by the SMART (Securitized Multiple Asset Rated Trust) and/or GREAT (Global Rated Eligible Asset Trust) trusts.[3] The assets of these trusts (charged-off credit card accounts) were serviced by CFS, and the proceeds were paid over to the trusts under a servicing agreement between CFS and the trusts until CFS ceased doing business in 1999. After CFS rejected the servicing agreements, servicing of the trust

---

[2]Ms. Harris also refers to the collection by CFS of an account originally owned by Fleet Credit Card Services. Ms. Harris paid CFS the negotiated settlement amount in full and in December 1998, CFS advised Ms. Harris that the account was satisfied. See Complaint at page 9-11. The Fleet debt is unrelated to the debt that is the subject of Ms. Harris's Complaint, and Ms. Harris does not allege that CFS violated any regulations in collecting the Fleet debt.

[3]NCO's collection letter dated February 3, 2003, indicates that the creditor was "GREAT," the original creditor was First USA Bank, the account number was **** **** **** 8211, and the amount of debt was $17,251.19; it further indicates that "[t]he above account(s) were previously serviced by CFS after being purchased from the original institution noted above by one of the following companies[:]" GREAT, SMART975 or SMART976. Complaint at page 7-8.

assets was assumed by NCO.  Through correspondence with NCO's counsel, Ms. Harris was led to believe that the funds collected by NCO were paid to CFS's bankruptcy estate; this contention CFS emphatically denies.  However, Ms. Harris is nonetheless seeking the return of the funds collected by NCO on the First USA/Bank One account from CFS.[4]

CFS contends that it is entitled to judgment as a matter of law because any collection activity on the account at issue by CFS occurred at least seven years before Ms. Harris filed her Complaint, and all collection activity by NCO on the account ended more than one year prior to the filing of the Complaint.  The FDCPA provides that any action to enforce any liability created by a violation of the FDCPA must be filed within one year from the date of the violation.

IV.    Record on Summary Judgment

The following material facts are uncontested and are supported by the record:[5]

Prior to its bankruptcy filing, CFS was in the business of collecting delinquent, charged off credit card and other accounts that it owned outright, as well as accounts

_____

[4]Ms. Harris is also seeking relief from NCO in the United States District Court for the Eastern District of Pennsylvania in Harris v. NCO Financial Systems, Case No. 07-CV-05546-EL.

[5]In her Response, Ms. Harris does not contest any of CFS's Statements of Undisputed Facts.  Pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Bankruptcy Rule 7056), when a movant's statement of fact is properly supported with evidence, and the non-movant fails to provide the Court with evidentiary material that creates a genuine issue of fact, the Court may take the movant's statement of fact as established.  See also Local Rule 7056-1 (B) ("All properly supported material facts set forth in the movant's statement shall be deemed admitted for the purpose of summary judgment unless specifically controverted by a statement of the non-movant that is supported by evidentiary material").

6

transferred to certain trusts created under various asset-backed securitizations.  CFS's Statement of Undisputed Facts ("SUF"), ¶ 2; Affidavit of Bradley D. Sharp in Support of Motion for Summary Judgment ("Sharp Aff.") (attached to CFS's Brief as Exhibit A), ¶ 6.

CFS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 11, 1998 (the "CFS Case").  On September 14, 2001, this Court entered an Order Confirming Second Amended Plan of Orderly Liquidation (CFS) (the "Confirmation Order"), thereby confirming the Second Amended Plan of Orderly Liquidation (CFS) (the "Plan").  Confirmation Order (attached to CFS's Brief as Exhibit B), Main Case Doc. 3306.

Pursuant to the Plan, on its effective date, CFS became a Delaware limited liability company, the sole member of which was the portion of the CFS Liquidating Trust that was a grantor trust for the benefit of holders of claimants against (a) the ABS Liquidating Trust and (b) the Unsecured Creditors Liquidating Trust.  Plan (attached to CFS's Brief as Exhibit C), § 4.8(b).  The CFS Liquidating Trust was created for the purpose of liquidating assets of the CFS estate that were distributed to the CFS Liquidating Trust in the Plan, and administering and distributing those assets for the benefit of the two classes of creditors (*i.e.*, unsecured creditors and ABS creditors).  Id.  Bradley D. Sharp ("Sharp") was appointed trustee of the CFS Liquidating Trust.  Sharp Aff. ¶ 5.

Ms. Harris filed her Complaint on October 12, 2007.  In her Complaint, Ms. Harris claims that CFS collected $850.00 from her in connection with the First USA/Bank One debt, account number **** **** **** 8211, between December 2, 1998, and March 17, 1999.  Complaint at 2; SUF, ¶ 12.

7

Ms. Harris also contends that NCO repeatedly contacted her regarding the First USA/Bank One account number **** **** **** 8211, and that as a result of NCO's "relentless pursuit," she made payments to NCO in excess of $10,000.00.[6] Complaint; SUF, ¶¶ 10, 11. The first of such payments was made on or about August 24, 1999, and the last payment was made on or about June 3, 2006. Complaint at 2-3, 5; SUF, ¶¶ 11, 15. On August 29, 2006, in a letter from NCO to Ms. Harris, NCO acknowledged that the compromised amount of the debt was paid in full. Complaint at 14; SUF, ¶ 15.

Ms. Harris contends that she made the above-described payments to CFS and NCO despite the fact that no proof was given to her by CFS or NCO that the account was Ms. Harris's debt. Complaint at 1-2; SUF, ¶ 14.

Ms. Harris also alleges that NCO violated the FDCPA in repeatedly contacting her and in collecting in excess of $10,000.00 in satisfaction of a debt that she contends she did not owe. Because Ms. Harris believed that CFS owned the debt and/or benefitted from NCO's collections, Ms. Harris seeks reimbursement from CFS of the allegedly wrongful collections by NCO. Complaint; SUF, ¶ 7-9; Sharp Aff., ¶ 12-14.

The First USA/Bank One account at issue was at one time owned by CFS, as successor in interest to the original creditor, but CFS sold the debt in 1998 to a securitization trust. SUF, ¶ 16; Sharp Aff., ¶ 18. CFS serviced the securitization trust's accounts, including

_____

[6]NCO acknowledged receiving $10,550.00; CFS admits that Ms. Harris provided proof of payment in the amount of $10,755.00. Because the disposition of this proceeding concerns the timeliness of Ms. Harris's Complaint, the discrepancy in the amount of payments is not relevant.

the First USA/Bank One account, until this Court approved CFS's rejection of its servicing agreements with the trust.  Id.  Upon rejection, the servicing of the securitization trust's assets was transitioned to NCO, and CFS ceased to be the collection agent for the trust.  Id. After servicing was transitioned to NCO, CFS had no further connection to the First USA/Bank One account. SUF, ¶ 17; Sharp Aff., ¶ 19.  Ms. Harris admits that the last contact she had with CFS was in February 2000.  Complaint at 4; SUF, ¶ 13.

Although Ms. Harris received certain correspondence from counsel for NCO indicating that CFS was the beneficiary of the collections by NCO, those representations are not true; CFS was not the owner or beneficiary of the First USA/Bank One account during the time periods referenced in the Complaint.  SUF, ¶ 18; Sharp Aff., ¶ 20.  CFS has not received any funds from NCO as a result of its collection of the First USA/Bank One account at issue.  SUF, ¶ 19; Sharp Aff., ¶ 21.

## V.    Conclusions of law

The only conceivable claims against CFS that the Court can discern from the Complaint are for alleged violations of the FDCPA.  The FDCPA governs the conduct of debt collectors who collect consumer debt on behalf of creditors.  The FDCPA regulates the communications that debt collectors may have with consumer debtors and with third parties about a consumer's debt; prohibits harassment or abuse, false or misleading representations and unfair practices in connection with the collection of consumer debts; requires a collector to "validate" a consumer debt and refrain from attempting to collect disputed debts; and

provides a private right of action by consumers against debt collectors for violations of these regulations.  See 15 U.S.C. § 1692a - 1692k.

In her Complaint, Ms. Harris alleges that in 1998 and 1999, CFS collected $850.00 from her in connection with the First USA/Bank One account without "validating" the debt. Further, she claims that NCO, on behalf of CFS, also violated the FDCPA by failing to "validate" the debt, and by using intimidation and harassing collection techniques and misrepresenting the effect of non-payment on her credit report.

The "validation" requirement is contained in Section 1692g of title 15, which states, in part–

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

10

(b) **Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . .

15 U.S.C. § 1692g(a) and (b).   Sections 1692d, 1692e and 1692f of title 15 prohibit harassment or abuse, false or misleading representations, and unfair practices in connection with the collection of a consumer debt by a debt collector.

Under Section 1692k of title 15, a debt collector that fails to comply with the FDCPA may be liable to an individual debtor in the amount of the actual damages sustained by the debtor, additional damages of up to $1,000, and attorney fees and costs.   15 U.S.C. § 1692k(a). Under the heading "Jurisdiction," Section 1692k provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, **within one year from the date on which the violation occurs**." 15 U.S.C. § 1692k(d) (emphasis added).   See also Johnson v. Riddle, 305 F.3d 1107, 1113-14 (10th Cir. 2002) (one year statute of limitations on FDCPA violation begins on the date the debtor gained notice of the last element of the alleged violation; in that case, the service of process of the lawsuit  to collect a debt allegedly prohibited by law was the last act wherein the debt collector could have avoided violating the FDCPA); Burdett v. Harrah's Kansas

11

Casino Corp., 294 F. Supp.2d 1215, 1233 (D. Kan. 2003) (claim was time-barred when no collection activity occurred in the one year period preceding the filing of the lawsuit).

The Court need not and does not decide (1) whether CFS violated the FDCPA by failing to "validate" the debt when it collected $850.00 from Ms. Harris in 1998 and 1999; (2) whether NCO violated the FDCPA in its collection efforts; (3) whether NCO was an agent of, or otherwise acted on behalf of CFS; or (4) whether Ms. Harris did or did not owe the First USA/Bank One debt collected by CFS and NCO.  Taking the undisputed facts and Ms. Harris's allegations in a light most favorable to Ms. Harris, it is clear that CFS's collection activity ceased, at the latest, in February 2000 when CFS advised Ms. Harris that the account would be serviced by NCO in the future (Complaint at 4), and NCO's collection activity ceased, at the latest, on August 29, 2006, when NCO acknowledged that the subject debt was settled and paid in full (Complaint at 14).  Ms. Harris's Complaint was filed on October 17, 2007, which is more than one year after any collection activity occurred.  Thus, Ms. Harris's claims are time-barred pursuant to 15 U.S.C. § 1692k(d), and CFS is entitled to summary judgment in its favor as a matter of law.[7]

---

[7]The Court notes that the purposes and policies underpinning the establishment of statutes of limitations are illustrated by the circumstances of this case.

> "Statutes of limitations are primarily designed to assure fairness to defendants." Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 428 . . . (1965). They "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 . . . (1974) (quotation omitted).  "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time

## VI.   Conclusion

For the reasons stated herein, judgment shall be entered in favor of CFS and against

Ms. Harris.

**SO ORDERED** this 21st day of July, 2008.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

comes to prevail over the right to prosecute them." Id. (quotation omitted).

Turgeau v. Admin. Rev. Bd., 446 F.3d 1052, 1058 (10th Cir. 2006).

CFS has not operated as a debt collector since 1999, no longer has any control over former employees who may have had knowledge of facts underlying Ms. Harris's claim, has addressed all *timely filed* claims and debts through its plan of orderly liquidation, and, most significantly, was authorized by this Court, after notice to parties in interest, to destroy its business records. See Order Approving Procedures for (i) Destruction of Business Records and (ii) Disposition of Computers, Related Software and Stored Computer Records (CFS) entered December 29, 2006, Main Case Doc. 4597. It is manifestly unfair to require CFS to defend against alleged conduct that occurred several years ago, because documentary evidence required to defend has been lost and witnesses possessing relevant information are unavailable to CFS, and in any event, such witnesses would not likely be able to recall events related to the collection of Ms. Harris's debt without documentation.

Ms. Harris, on the other hand, knew or should have known of the claims she alleged under the FDCPA as early as 1998 and as late as August 2006, but did not assert the claims until more than a year after she had paid NCO in full a debt she now contends she did not owe.

13